UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DELANA REGINA HYTEN<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No. CV 3:15-CV-00163-REB<br><br>**MEMORANDUM DECISION AND ORDER ON PETITION FOR REVIEW** |

Now pending before the Court is Petitioner Delana Regina Hyten's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny her disability benefits.[1] This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS**

On October 11, 2011, Petitioner applied for Social Security Disability Insurance ("SSDI") benefits. She filed an application for supplemental security income ("SSI")

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

benefits on October 19, 2011. Each of these petitions alleged a disability onset date of December 14, 2010. (AR 17). These claims were denied initially on February 17, 2012, and denied upon reconsideration on September 14, 2012. (Id.). The Petitioner thereafter requested a hearing before an Administrative Law Judge ("ALJ") as to both claims, which hearing was held by video-conference on July 19, 2013. ALJ Thomas Cheffins presided over the hearing, at which the Petitioner was present and represented by Mary Kay Fowler, an attorney. A Vocational Expert, Gretchen A. Bakkenson, gave testimony at the hearing, as did Petitioner herself. (*Id.*) At the time of the hearing, Petitioner was 44 years old and had past relevant work as a retail sales clerk, as an assistant store manager, a building parts assembler, and as a psychiatric technician. (AR at 36-40).

On August 10, 2013, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 17-25). On September 17, 2013, Petitioner requested review from the Appeals Council. (AR 12.) The Appeals Council then denied review on March 18, 2015, (AR 6-8), making the ALJ's decision the Commissioner's final decision.

Petitioner seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ failed to accord proper weight to the opinion evidence in the file. Petitioner also argues that the ALJ erred in finding that she was not fully credible as to the limiting effects of pain and other symptoms arising from primarily from her physical impairments, which included degenerative disc disease in the lumbar and cervical spine, bilateral plantar fasciitis, and obesity. (Petitioner's Brief, Dkt. 15 at p. 2).

**MEMORANDUM DECISION AND ORDER - 2**

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y. of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y. of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving

**MEMORANDUM DECISION AND ORDER - 3**

conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in

**MEMORANDUM DECISION AND ORDER - 4**

substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ concluded that although Petitioner remained employed for approximately three months beyond the date of her alleged disability onset, her earnings in this time frame did not rise to the level of substantial gainful activity. (AR. 19).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the

**MEMORANDUM DECISION AND ORDER - 5**

claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, bilateral plantar fasciitis, and obesity. (AR 19).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that the claimant's impairments did not meet or exceed any of the listed impairments, either singly or in combination. (AR 20).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work

**MEMORANDUM DECISION AND ORDER - 6**

must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that, physically, Petitioner retained the ability to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to additional restrictions on lifting and carrying objects in excess of ten pounds, which Petitioner could do frequently, and twenty pounds, which Petitioner could do only occasionally. The ALJ also imposed additional limitations on activities such as climbing, balancing, stooping, kneeling, crouching and crawling. Crucially for the discussion herein, the ALJ found that Petitioner could only sit, stand and walk for up to six hours out of a normal workday. (AR 20).

In the fifth step, if it is established that a claimant can no longer perform past relevant work because of her impairments, the Commissioner then must show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner was capable of performing her past relevant work as a sales clerk. (AR 24).

**B.     Whether the ALJ Erred in Evaluating the Medical Opinion Evidence**

First, Petitioner argues that the ALJ erred in deciding to give little weight to the

**MEMORANDUM DECISION AND ORDER - 7**

opinions of three of her treating providers, consisting of a treating pain specialist, a physical therapist, and a physician's assistant, each of whom opined that she was disabled. The Commissioner, on the other hand, argues that the ALJ's decision was supported by the report of the state consulting physician Dr. Nadine Keer, who opined that Petitioner was capable of performing light work, and also that she was capable of sitting, standing, and walking for up to six hours per day. The ALJ relied heavily on Dr. Keer's opinion in arriving at his RFC assessment. (AR 23, 87-95). He also relied to a lesser extent upon the opinion of Dr. Arvind Chopra, another state consulting physician, who opined that Petitioner was capable of sedentary work and that she could only sit, walk, and stand for up to four hours a day. (*Id.*; AR 59-68). Because this case presents a situation where the opinions of the state disability consultants differed significantly from the opinions of the treating providers, the critical question for the Court is whether the ALJ's decision to give little weight to the opinions of the various treating providers comported with the applicable legal standards. The Court concludes that the answer to that question is yes.

    1.    **Legal Standard Governing Assessment of Treating Providers**

In Social Security cases, both ALJs and courts reviewing an ALJ's decision "employ a hierarchy of deference to medical opinions depending on the nature of the services provided." *Ryan v. Comm'r. of Soc. Sec. Admin,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing standard in dissent); *See also, Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). This hierarchy distinguishes among three types of physicians: those who treat the

**MEMORANDUM DECISION AND ORDER - 8**

claimant, those who examine the claimant but do not treat her, and those who neither examine nor treat but simply review the medical evidence prepared by others and provide opinions as to the presence or absence of functional limitations. Generally speaking, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Ryan,* 528 F.3d at 1204. If a treating doctor's opinion is not contradicted in the record by the opinion of another doctor, an ALJ may reject it only for clear and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1198; *Lester,* 81 F.3d at 830. The ALJ must accord "controlling weight" to a treating doctor's opinion if medically approved, diagnostic techniques support the opinion and the opinion is not inconsistent with other substantial evidence in the record. *Ligenfelter v. Astrue,* 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). This standard of deference to the opinions of treating doctors does not, however, require an ALJ to accept the opinion of any doctor, including a treating doctor, that is "brief, conclusory, and inadequately supported by clinical findings." *Chaudry v. Astrue*, 688 F.3d 661 (9th Cir. 2012). An ALJ may also properly reject opinions of treating physicians where they are wholly based on the claimant's self-reporting and not backed up by any objective medical findings. *Turner v. Comm'r. Soc. Sec.,* 613 F.3d 1217, 1222-24 (9th Cir. 2010); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).

      A somewhat different standard governs an ALJ's assessment of treating providers such as nurse practitioners, physician's assistants, physical therapists, and other

**MEMORANDUM DECISION AND ORDER - 9**

providers who are not considered "acceptable medical sources" under Social Security Ruling 06-03p. For purposes of this case, the primary distinction between "acceptable medical sources" and "other" medical sources is that opinions from "other" medical sources are not entitled to controlling weight, as are opinions of treating physicians. *See* 20 C.F.R. §§ 404.1513(a) (1–5), 416. 913(a)(1–5). *See also, Hudson v. Astrue,* 2012 WL 5328786 N. 4 (E.D. Washington 2013). At the same time, the Commissioner has directed that the opinions of such providers are nonetheless "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* An ALJ may not reject the opinions of such providers entirely without comment, but he "need only give reasons germane to each witness for doing so." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).[2]

### 2. Kurt Draper and Carlene Bainter

The Court first addresses the ALJ's evaluation of the opinions of Kurt Draper, a physical therapist, and Carlene Bainter, a physician's assistant. As the ALJ recognized, both the physician's assistant, Carlene Bainter, and the physical therapist, Kurt Draper,

---

[2] In considering how much weight to give "other" medical source opinion evidence, SSR 06-03p instructs ALJs to consider factors such as 1) how long the source has known the patient and how frequently he or she has seen the individual; 2) how consistent, or inconsistent, is the opinion with other medical evidence; 3) the degree to which the source presents relevant evidence in support of his or her opinion; 4) how thoroughly the source explains the opinion; 5) whether the source has a particular area of expertise germane to the claimant's impairments; and 6) any other factors that tend to support or refute the opinion. *Anderson v. Colvin,* 2016 WL 7013472 at * 6 (D. Oregon 2016) (citing SSR 06–03p).

**MEMORANDUM DECISION AND ORDER - 10**

fall into the category of providers who are considered "other" medical sources.

Ms. Bainter saw Petitioner in December of 2010, and her opinion consisted solely of a single page document which stated, without any explanation or reference to clinical data, that Petitioner was "unable to work." (AR 327). The ALJ gave no weight to this opinion because it was conclusory, because Ms. Bainter was not an acceptable medical source, and because the opinion contained no detailed analysis of Petitioner's specific functional limitations. In making that choice, the ALJ was obligated to provide "germane" reasons for his decision to discount Ms. Bainter's opinion, and his reasons for doing so more than met that standard. Conclusory opinions, such as Ms. Bainter gave here, are of little value regardless of whether the provider who issues them is an "acceptable medical source" or not.

Kurt Draper, the physical therapist, saw Petitioner one time, when he conducted a residual functional capacity examination in April of 2013. (AR 600-604). Mr. Draper's assessment limited Petitioner's sitting capabilities to no more than three hours per day, and her standing and walking capacities to a total of four hours per day. He also limited her to sitting for no more than two to three hours at a single period, and identified significant weakness in her upper extremities and a limited range of motion. (600-602). The ALJ concluded that Petitioner was not putting forth full effort during this examination because the results of certain tests were inconsistent with primary care records which "consistently found the claimant with normal strength and range of motion in all extremities." A review of the records cited by the ALJ supports his conclusion. Dr.

**MEMORANDUM DECISION AND ORDER - 11**

Bonilla's chart notes from just one month prior to Petitioner's visit to Mr. Draper noted normal range of motion in all extremities, and he made the same findings in February of 2013 and in December of 2011. (AR 606-607, 609-610, 429-30). Notes from Chino Valley Medical Center from February of 2012 also describe Petitioner as having full range of motion in her extremities.³ (AR 539).

      The ALJ also noted that Mr. Draper was not an acceptable medical source under the regulations, that he saw the Petitioner only once for the specific purpose of procuring the functional capacity evaluation, that he did not have an established treatment relationship with her, and that he did not review her medical history. (AR. 23). The inconsistencies between Mr. Draper's findings and the rest of the medical records, together with his limited relationship with the Petitioner and his lack of familiarity with the medical records would constitute clear and convincing reasons for rejecting his opinion even if he had been an "acceptable medical source" under SSR 06-03p. The ALJ's assessment of Mr. Draper's opinions easily satisfies the much less stringent standard for "other" medical sources, in that the ALJ did not reject those opinions without comment, and gave a number of germane reasons for deciding to give them little weight.

---

      ³ Petitioner's argument that individuals with disabling back pain often have full strength and range of motion in their extremities is misplaced here. A claimant who does not put forth full effort on medical tests undermines her own credibility, even if the test at issue cannot definitively diagnose a disability. For the ALJ, the inconsistencies between Mr. Draper's findings about Petitioner's strength and range of motion and the rest of the medical records indicated that Petitioner may have been failing to fully cooperate for the purpose of obtaining secondary gain.

**MEMORANDUM DECISION AND ORDER - 12**

### 3. Dr. Gabriel Bonilla

The Court next addresses the ALJ's evaluation of the opinions of Dr. Gabriel Bonilla, M.D. Dr. Bonilla, a pain specialist, gave opinions as to Petitioner's ability to work and residual functional capacity on two occasions. The first opinion, dated September 12, 2013, was a medical source statement in which Dr. Bonilla restricted Petitioner to continuous sitting for no more than an hour at a time, and opined that she could only sit for a total of two hours out of an eight hour workday. This medical source statement also restricted Petitioner to standing and walking for only one hour at a time, and a total of one hour out of the day. (AR 528). In the comments section to his report, Dr. Bonilla explained that "patient has chronic SI joint pain that has not responded to conservative treatment. Has not responded to SI joint injections nor nerve blocks of the SI joint." Dr. Bonilla's second opinion was dated July 17, 2013. This opinion consisted of a single page document that simply adopted the findings of Mr. Draper and offered no new details or analysis. (AR 599).

In evaluating Dr. Bonilla's reports, the ALJ focused on those aspects of his opinions related to the Petitioner's sitting, standing and walking ability. However, the ALJ concluded that these opinions were "flatly contradicted by Dr. Bonilla's own longitudinal treatment records, as well as primary care records, that have consistently found the claimant with normal strength and range of motion of the extremities, normal reflexes and sensation, and no gait abnormalities." (AR 24). In this Court's review of the record, there is substantial evidentiary support in the record for the ALJ's conclusion, for

**MEMORANDUM DECISION AND ORDER - 13**

all the reasons discussed above with respect to Dr. Draper's opinion. The Court also notes that many of the instances in the record that refer to Petitioner's normal range of motion were Dr. Bonilla's own records. (AR 606-607, 609-610, 429-30).  Further, as the ALJ noted in another part of his opinion, Dr. Bonilla's office notes contain references to the fact that Petitioner was responding well to relatively conservative treatments. For example, on February 8, 2012, Dr. Bonilla stated that Petitioner reported "about 40% to 45% improvement of her symptoms" after undergoing right-sided radiofrequency ablation at the L4, L5, S1, and S2 joints. (AR 453). This same office note indicates that Petitioner had "responded really well to medial branch blocks of those same joints in the past." (*Id.*). Yet, just a few months later, Dr. Bonilla opined that Petitioner's symptoms had *not* responded well to nerve blocks or injections at the sacro-iliac joint. An ALJ need not give controlling weight to a treating doctor's opinion when the opinion as to disability is inconsistent with his own treatment notes. *See, e.g., Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005) (holding that discrepancy between a treating doctor's opinion and his treatment notes was a "clear and convincing" reason to discredit the opinion). For all these reasons, the ALJ's conclusion that Dr. Bonilla's opinions may have been motivated by sympathy withstands the "clear and convincing reasons" test that courts must apply when deciding whether an ALJ erred by discounting a treating doctor's opinions.

      In Dr. Bonilla's second, July 2013 opinion, he states without any explanation that he agreed with the findings of the physical therapist Kurt Draper. An ALJ is not

**MEMORANDUM DECISION AND ORDER - 14**

obligated to give controlling weight to treating opinions that are conclusory and contain no supportive details, analysis, or explanation of the clinical findings that would support the conclusion. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir.2004); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). Further, as noted above, Mr. Draper's RFC assessment was itself inconsistent with other medical evidence in the record.

For all these reasons, the Court finds that the ALJ did not err in his assessment of Dr. Bonilla's opinions. Accordingly, the ALJ was entitled to rely on the opinions of the state disability consulting physicians, each of whom determined that Petitioner was not disabled, in formulating his RFC assessment.

C.     The ALJ's Credibility Analysis

Lastly, the Court addresses Petitioner's assertion that the ALJ erred in finding her less than fully credible as to her allegations of disabling pain.

The Ninth Circuit has held that "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on "clear and convincing reasons." *Carmickle v. Commissioner, Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008). If the record establishes the existence of an underlying impairment that could produce the symptoms described, "an ALJ may find testimony not credible in part or in whole, [but] he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v.*

**MEMORANDUM DECISION AND ORDER - 15**

*Social Security Administration,* 466 F.3d 880 (9th Cir. 2006). Unless there is affirmative evidence of malingering in the record, an ALJ "may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Schow v. Astrue,* 272 Fed.Appx. 647, 651 (9th Cir. 2008). "General findings are not sufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue,* 622 F.3d. 1228, 1234 (9th Cir. 2010). In weighing credibility, the ALJ may consider the claimant's reputation for truthfulness or lying, inconsistencies in his testimony or between his testimony and his conduct or the medical records, the claimant's daily activities and work record, as well as testimony from third parties about the nature, severity, and effect of the symptoms about which he complains. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ's decision on Petitioner's credibility met these standards.

The first reason the ALJ gave for discounting Petitioner's credibility had to do with her refusal, upon the advice of her lawyer, to appear at a consultative medical examination with a doctor appointed by the Commissioner that had been scheduled for September 4, 2012. Petitioner's lawyer explained that he did not believe that a fair and unbiased assessment could occur in the context of a "short, cursory evaluation," done by state-appointed doctors. He also requested that Petitioner's own physician, Dr. Bonilla, be allowed to conduct the examination instead of the state appointed consultant. (AR 227). The ALJ found that the stated reasons for not attending the independent consultive examination were not sufficient, because neither Petitioner nor her lawyer provided any

**MEMORANDUM DECISION AND ORDER - 16**

facts to support the assertion that a physician appointed by the Commissioner could not be fair and unbiased. (AR 21).

Petitioner argues that the Commissioner was not justified in the request that she submit to an independent consultive exam, but the relevant regulations specifically provide that the Commissioner may use a source other than the claimant's treating provider when "there are conflicts or inconsistencies in your file that cannot be resolved by going back to your medical source." 20 C.F.R. § 404.1519i. The inconsistencies in Dr. Bonilla's opinions, described above, made reliance on his opinions questionable, so the Commissioner was fully justified in requiring Petitioner to submit to an independent consultive examination. Under these circumstances, the Petitioner's refusal to participate in an independent examination did constitute a clear and convincing reason supporting the adverse credibility determination.

The ALJ also gave a number of other reasons supporting his credibility findings. The ALJ also noted that medical records spanning from 2010 to 2013 indicated that the claimant "exercises daily," and that the ability to engage in daily exercise was inconsistent with her claims of disability. (AR 21, 406, 453). Petitioner contends that her testimony established that her exercise attempts consisted of little more than walking to the mailbox and other similar activities, but the medical records themselves neither describe her exercise in such a manner, nor do they do suggest that her exercise activities were so circumscribed. The ALJ also relied on a third-party function report from Petitioner's son, which indicated that Petitioner was able to play with her grandchildren

**MEMORANDUM DECISION AND ORDER - 17**

two to three times a week, drive independently, and manage her own finances. (AR 239).
Inconsistencies between a claimant's daily activities and her allegations of disabling
levels of pain are factors that an ALJ may properly rely on in finding that a claimant is
less than fully credible. *Smolen,* 80 F.3d at 1284.

    Finally, the ALJ also found that "concerning the claimant's spinal impairments,
the record shows that these have been less severe than the claimant has alleged, and less
than totally disabling in severity." (AR 20). While ALJs may not base adverse credibility
determinations *solely* on the lack of objective medical evidence to support the claimed
symptoms, at the same time, they are not required to turn a blind eye to a stark
disconnect between a claimant's allegations at the hearing and the medical records. In
fact, the Ninth Circuit has held that lack of medical evidence may be a factor (albeit in
combination with other factors) upon which ALJs can rely in performing their credibility
analyses. *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005). Here, the record contains
numerous references suggesting that, far from being disabling conditions, Petitioner's
degenerative disc disease was being treated only with conservative measures and that it
was responding well to treatments such as nerve branch blocks and radiofrequency
ablations. (AR 378, 453, 519, 592). These reasons, on their own and taken as a whole,
comport with the legal standards requiring that an adverse credibility determination be
based on clear and convincing evidence.

## IV.  ORDER

    Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is **DENIED,**

**MEMORANDUM DECISION AND ORDER - 18**

and the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.



DATED: **March 31, 2017**

_____
Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 19**